# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNE FABIAN ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 15-292 |
| ALLEGHENY COUNTY, *a municipal* ) | Judge Nora Barry Fischer |
| *subdivision of the Commonwealth of* ) | |
| *Pennsylvania*; and MARC CHERNA, *in his* ) | |
| *individual capacity as Director of Allegheny* ) | |
| *County Department of Human Services*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

In this case, Plaintiff Penne Fabian ("Plaintiff" or "Fabian") brings § 1983 First Amendment retaliation and breach of contract claims against Defendants Allegheny County ("the County"), and Marc Cherna ("Cherna"). (Docket No. 10). Plaintiff has also sued Cherna individually for tortious interference with contractual relations. (*Id.*). Plaintiff's claims arise from her termination by non-party Jeremiah's Place in January of 2014 which was purportedly occasioned at the behest of Cherna, who disparaged her to Jeremiah's Place executives and told them that she was forbidden from having any contact with Children Youth and Families, ("CYF"). (*Id.*). Cherna oversaw the activities of CYF in his position as Director of Allegheny County Department of Human Services, ("DHS"), and CYF was a critical source of funding for the non-profit activities of Jeremiah's Place. (*Id.*). Plaintiff contends that Cherna took these actions due to the facts that she previously filed a lawsuit against him in which she alleged that she "blew the whistle" or spoke out against his misconduct including covering up from public and media scrutiny that statistics demonstrated that CYF was performing at a very low rate in monitoring at-risk children. (*Id.*). The prior lawsuit was settled in 2005 and subsequent

1

proceedings before the Honorable Stanton Wettick in the Court of Common Pleas resulted in the denial of Plaintiff's motion to enforce the settlement agreement, a decision which was affirmed by the Superior Court of Pennsylvania in June of 2008, with a petition for allowance of appeal of that order being denied by the Supreme Court of Pennsylvania in December of 2008. (Docket No. 12 and attachments).

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint for failure to state a claim and for lack of jurisdiction, (Docket No. 12), which is opposed by Plaintiff, (Docket No. 14). Oral argument was held on July 27, 2015 and this Motion is now fully briefed as the parties' post-hearing supplemental briefs and responses have been received and reviewed by the Court. (Docket Nos. 13, 14, 18, 21, 22, 23). Having fully considered the parties' arguments and after evaluating the allegations in Plaintiff's Amended Complaint, (Docket No. 10), in accordance with the relevant legal standards governing this Court's consideration of motions brought under Rule 12(b)(1), *see e.g., Petruska v. Gannon University,* 462 F.3d 294, 302 (3d Cir. 2006), and Rule 12(b)(6), *see e.g., Fantone v. Latini,* 780 F.3d 184, 186 (3d Cir. 2015), and for the following reasons, Defendants' Motion to Dismiss is [12] DENIED.

Initially, Defendants' Motion to Dismiss is DENIED to the extent that they argue that dismissal is appropriate under Rule 12(b)(1) for lack of subject matter jurisdiction over all of Plaintiff's claims under the *Rooker-Feldman* doctrine and over the breach of contract claim pursuant to *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 382 (1994), which generally holds that federal courts lack subject matter jurisdiction over state settlement disputes, absent some other independent basis for the assertion of federal jurisdiction. This Court is well-familiar with the <u>narrow</u> scope of the *Rooker-Feldman* doctrine and has dismissed claims on this

2

basis in appropriate cases. *See e.g.*, *Van Tassel v. Piccone*, 2014 WL 3401680, (W.D. Pa. Jul. 10, 2014), *aff'd*, 608 F. App'x 66 (3d Cir. 2014), *cert denied*, 136 S. Ct. 332 (2015). But, this is not such a case as Plaintiff has pled independent causes of action for retaliation, breach of contract and tortious interference with contractual relations seeking compensation for the actions of Cherna and the County that led to her termination from Jeremiah's Place in 2014. (Docket No. 10). Hence, the Court fails to see how the present lawsuit could be, in effect, an attempt to appeal or directly challenge the earlier state court rulings, all of which related to her prior employment at CYF and her subsequent placement in a position at the Allegheny County Jail as part of the settlement of that lawsuit. *See Van Tassel*, 608 F. App'x at 69 ("the District Court lacked jurisdiction under the *Rooker-Feldman* doctrine because Appellant's claims are essentially an appeal from a state court judgment."). For essentially the same reason, Plaintiff could not have released the claims in her present lawsuit because the prior settlement agreement that all of the parties executed in 2005 only released claims arising from her 2002 termination from CYF. (*See* Docket No. 12-2).[1] Finally, the *Kokkonen* decision has no bearing on this Court's jurisdiction over the breach of contract claim because, as is set forth more fully below, this Court has independent bases to exercise subject matter jurisdiction, i.e., federal question jurisdiction, 28 U.S.C. § 1331, over Plaintiff's § 1983 First Amendment retaliation claim and supplemental jurisdiction, 28 U.S.C. § 1367, over the state law causes of action. *See McNeilly v.*

---

[1] The Court notes that ¶ 3.A. of the Settlement Agreement expressly states, in pertinent part, that:

> Fabian … releases … the County … and its officers, … [and] employees, … [from any] other claim or rights that Fabian may have or claims to have against the above said parties and persons **as a result of her termination from the County's Office of Children, Youth and Families on October 23, 2002, including any and all allegations which were raised or could have been raised in the action at General Docket no. 03-7820**.

(Docket No. 12-2 at ¶ 3.A.) (emphasis added).

3

*City of Pittsburgh*, 40 F. Supp. 3d 643, 651-53 (W.D. Pa. Aug. 22, 2014). Accordingly, Defendants' jurisdictional challenges are wholly without merit and overruled.

Moving on to Defendant's Rule 12(b)(6) challenges, the Court rejects Defendant's position that Plaintiff's § 1983 First Amendment retaliation claim should be dismissed as untimely on statute of limitations grounds. "The law of this Circuit (the so-called 'Third Circuit Rule') permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if the time alleged in the statement of the claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (internal quotation omitted). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Id.* (quotation omitted). It is uncontested that the statute of limitations applicable to § 1983 claims alleging First Amendment retaliation is two years. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). In this Court's estimation, dismissal of the § 1983 First Amendment retaliation claim is not warranted because Plaintiff has alleged several discrete acts of retaliation which occurred in January of 2014, such that her lawsuit filed on March 2, 2015 is well within the applicable limitations period. (*See* Docket Nos. 1; 10 at ¶ 11-12, 61-81). Therefore, the "Third Circuit Rule" precludes dismissal of the § 1983 claim under Rule 12(b)(6). *See Robinson*, 313 F.3d at 135.

Next, Defendants' Motion to Dismiss is DENIED to the extent that they argue that Plaintiff has failed to set forth sufficient facts to state a plausible § 1983 First Amendment retaliation claim against Cherna, individually. (Docket Nos. 13, 22). Viewing the allegations in Plaintiff's Amended Complaint in the light most favorable to her and resolving all inferences in her favor, as this Court must, the Court finds that each of the required elements have been

supported with sufficient facts to state a plausible claim, i.e., (1) she engaged in protected speech; and, (2) the same was a substantial or motivating factor in the alleged retaliatory action. *See Dougherty v. School Dist. of Philadelphia*, 772 F.3d 979, 986 (3d Cir. 2014). In support of this conclusion, the Court notes the following. Cherna contests the sufficiency of Plaintiff's pleading of both of these elements but neither argument is well-taken. (Docket Nos. 13, 22). As to the first element, Cherna admits that he "does not challenge" that Plaintiff's filing of the 2003 state lawsuit constitutes protected activity, (Docket No. 22 at n.1), and the Court agrees that such action is protected by the Petition Clause, clearly satisfying the pleading requirements for the first element. *See e.g., Hill v. City of Scranton*, 411 F.3d 118, 126 (3d Cir. 2005) (citing *San Filippo v. Bongiovanni*, 30 F.3d 424, 443 (3d. Cir. 1994)) ("any lawsuit brought by an employee against a public employer qualifies as a protected 'petition' under the First Amendment so long as it is not 'sham litigation.'"). Hence, Cherna's challenge to Plaintiff's alternative theory that the underlying speech is not protected by the Free Speech Clause has no bearing on whether Plaintiff's § 1983 First Amendment retaliation claim proceeds through discovery.[2]

Cherna next argues that Plaintiff's allegations do not suffice to show causation because there is not an "unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action" or a "pattern of antagonism coupled with timing" to establish the casual link. (Docket No. 13). The Court agrees that these are two of the available methods for a Plaintiff to show causation through circumstantial evidence in a retaliation case. *See Lauren W.*

---

[2] Although the Court believes that this is a curious argument in light of the fact that the County settled the underlying lawsuit with Plaintiff, given the fact intensive nature of the inquiry as to whether such speech is protected, the Court defers consideration of these arguments until they become relevant at summary judgment and/or trial, if Plaintiff continues to pursue this alternative theory. *See Dougherty*, 772 F.3d at 989 (acknowledging that the public employee test set forth in *Garcetti* is fact-intensive). This appears to be the appropriate course as many of the decisions upon which Defendants rely in support of their arguments on this point, including *Baranowski v. Waters*, 2008 WL 728366 (W.D. Pa. Mar. 18, 2008), *reconsideration granted, in part*, 2008 WL 4000406 (W.D. Pa. Aug. 25, 2008, *aff'd* 370 F. App'x 318 (3d Cir. 2010), were made at summary judgment and after consideration of a full record developed during discovery.

*ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). But, "'[t]hese are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference'" that the protected activity was the substantial or motivating factor in the alleged retaliatory activities. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (quoting *Kachmar v. Sungard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)). Here, Plaintiff does not need to resort to the suggested methods to prove <u>circumstantially</u> that Cherna retaliated against her due to her protected speech given her averments that Cherna disparaged her to Jeremiah's Place executives, telling them that she had "blown the whistle" on his misconduct and filed a lawsuit against him <u>at the same time</u> that he advocated that she be terminated because she was forbidden from having any contact with CYF. (Docket No. 10 at ¶¶ 69, 70). Accordingly, dismissal of the § 1983 claim against Cherna is not warranted at this stage.

Cherna's Motion seeking dismissal on qualified immunity grounds is similarly DENIED. The Third Circuit has held that qualified immunity protects government officials "'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Estate of Lagano v. Bergen Cnty. Prosecutor's Office.*, 769 F.3d 850, 858 (3d Cir. 2014) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)). To determine whether qualified immunity applies to a particular claim, this Court must engage in a two pronged analysis to decide "'(1) whether the plaintiff alleged sufficient facts to establish the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the defendant's actions.'" *Id.*

As noted above, Plaintiff has alleged sufficient facts to state a plausible claim of First Amendment retaliation against Cherna, making only the second element potentially at issue. Cherna contends that the First Amendment rights that Plaintiff seeks to enforce in this lawsuit

6

are not "clearly established" because his conduct, at most, constituted a breach of the prior Settlement Agreement and tortious interference with Plaintiff's employment at Jeremiah's Place. (Docket No. 13, 22). A right is "clearly established" if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted" with the caveats that the "very action in question need not have previously been held unlawful" and the "contours of the right" being "sufficiently clear such that the unlawfulness of the action is apparent in light of pre-existing law." *Dougherty*, 772 F.3d at 993 (internal citations and quotations omitted).

Applying this test to the well-pled allegations in Plaintiff's Amended Complaint, the Court disagrees with Cherna's cursory assessment that the defense of qualified immunity should bar the claim at this early stage of the litigation. (*See* Docket Nos. 13, 22). Even accepting that the Third Circuit has not decided a case in an identical scenario wherein a former employee is terminated from later employment with a third party due to an employer providing such a negative and retaliatory reference, this Court believes that it would be sufficiently clear to a reasonable officer in Cherna's position that he could not utilize his status as the Director of DHS to demand that a non-profit organization terminate an individual due to her prior protected activities, particularly where the entity relies on County funds to support its budget. *See Dougherty*, 772 F.3d at 993. The rights of public employees to be free from retaliation after exercising their rights under the First Amendment by engaging in speech on matters of public concern and filing lawsuits have been clearly established for many years. *See e.g., Dougherty*, 772 F.3d at 993 ("Since at least 1967, 'it has been settled that a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression."); *Hill*, 411 F.3d at 126. Plaintiff had previously sued Cherna and the County to enforce these specific First Amendment rights. (Docket No. 12-1). And, the terms of

the parties' Settlement Agreement – which Cherna signed – clearly carve out that Plaintiff was not waiving any rights she maintained under the First Amendment going forward. (*See* Docket No. 12-2 at ¶ 5 ("Nothing herein, however, shall be construed to, and/or constitute a waiver of Fabian's right to engage in protected speech under the 1st Amendment to the United States Constitution.")). Therefore, it should have been apparent to Cherna that it may be illegal for him to use her prior protected activities against Plaintiff as she alleges occurred in this case and that qualified immunity would not shield him from liability for doing so. *See Dougherty*, 772 F.3d at 993 ("Appellants had fair notice that their retaliation against [Appellee's] constitutionally protected speech would not be shielded by qualified immunity."). Accordingly, the Court denies Cherna's invocation of the qualified immunity defense, without prejudice.

The Court turns to the County's Motion to Dismiss the § 1983 claim against it for allegedly failing to sufficiently plead *Monell* liability. (Docket Nos. 13, 22). "Under *Monell,* for municipal liability to attach, any injury must be inflicted by 'execution of a government's policy or custom.'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 134 (3d. Cir. 2010) (quoting *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978)). One of the ways in which such a policy is made is "when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (internal quotation omitted). Once again, application of the Rule 12(b)(6) standard to the allegations in Plaintiff's Amended Complaint results in the Court finding that she has stated a plausible claim for *Monell* liability against the County.

To this end, Plaintiff alleges that as the Director of DHS, Cherna oversees CYF. (Docket No. 10 at ¶ 17). She continues that he "has the authority to make and enforce the policies of CYF, such that his actions are rendered an act of official government policy." (*Id.*). Although

she does not invoke the word "policy" to describe Cherna's activities in this case, a fair reading of the well-pleaded facts makes clear that he adopted a policy that forbade Plaintiff from interacting with CYF in any respect and did not permit her near CYF's offices. (Docket No. 10 at ¶ 71, 72). Plaintiff contends that this policy was adopted because of her prior lawsuit and protected activities and that Cherna specifically enforced it in his discussions with Jeremiah's Place which terminated her because "[t]his is … what Marc Cherna wants." (*Id*. at ¶¶ 85, 92-98). Given these allegations, Plaintiff has stated a plausible *Monell* claim against the County based on her allegations that a decisionmaker with final authority for CYF, Cherna, adopted and enforced a policy for CYF that inflicted a constitutional injury on her, i.e., infringed on her First Amendment rights. *See Beck*, 89 F.3d at 971. In addition, the Court declines to consider the County's further argument that Cherna would have made the same recommendation that Jeremiah's Place terminate Plaintiff because of her alleged insubordination for refusing to work at the Allegheny County Jail after the settlement, (Docket No. 22), because this position raises an affirmative defense, relying on matters outside the pleadings, that cannot provide for dismissal under Rule 12(b)(6). *See e.g., Morgan v. Covington Tp.*, 648 F.3d 172, 178-79 (3d Cir. 2011); *Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 930, n.1 (3d Cir. 2015) (dismissal is only appropriate under 12(b)(6) on the basis of an affirmative defense if it is apparent on the face of the complaint and documents relied on in the complaint.).

Finally, Cherna's Motion to Dismiss asserting that Count III, the tortious interference claim, is barred by the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S.A. §§ 8541-8564, is DENIED. It is well-settled that the PTSCA "denies immunity to any public employee when the court finds that his or her conduct constitutes, among other things, 'willful misconduct.' 'Willful misconduct' in this context has the same meaning as the term

'intentional tort.'" *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001) (quoting *Delate v. Kolle,* 667 A.2d 1218, 1221 (Pa. Commw. Ct. 1995)). Here, Plaintiff has sufficiently pled that Cherna committed the intentional tort of tortious interference with contractual relations such that the suit against him may proceed beyond the motion to dismiss stage. *See DeForte v. Borough of Worthington*, No. 2:13-CV-356, 2013 WL 6710355, at *8 (W.D. Pa. Dec. 18, 2013) (Hornak, J.) ("Plaintiffs' allegation that Mayor Feeney and Councilmember Rosen committed willful misconduct in the form of the intentional tort of tortious interference with contractual relations revokes their official immunity under § 8550, such that suit against them in their individual capacities may proceed."). Accordingly, Cherna's motion to dismiss Count III is also denied.

For these reasons, Defendants' Motion to Dismiss [12] is DENIED. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: November 24, 2015

cc/ecf: All counsel of record.